In the Matter of WALTER T. RANSBURG et al., Petitioners, *v.* S. ROBERT PUTTERMAN, as Temporary Village Clerk, et al., Respondents.

Supreme Court, Special Term, Nassau County, June 15, 1962.

*Julian Jawitz* for petitioners. *S. Robert Putterman,* respondent in person. *Charles E. Lapp, Jr.,* for Fred Lager and others, respondents.

FRANK A. GULOTTA, J. This application, brought on by order to show cause, seeks to annul and set aside a determination of the Village Clerk of the new Village of Atlantic Beach declaring invalid petitioners' nominating petitions for village office. It also asks that respondents' nominating petitions be declared invalid, or alternatively, that the notice of election for June 6, 1962, be annulled, and a restraining order issued enjoining the election.

After years of litigation, on May 31, 1962, an order was entered by the Appellate Division of the Supreme Court, Second Judicial Department, affirming an order of the County Court of Nassau County, declaring valid the incorporation of the Village of Atlantic Beach. (16 A D 2d 831; Village Law, art. 2; § 18.)

On June 4, 1962, pursuant to section 27 of the Village Law, respondent Putterman was appointed as Village Clerk by the Town Clerk of the Town of Hempstead. His term of office runs until his successor is chosen.

Section 28 of the Village Law imposes upon a Village Clerk the duty to schedule an election, and, acting in compliance with that direction, he selected June 20, 1962 as the election date.

On June 5 and 6, 1962, respondent Putterman received and filed a nominating petition for a slate of officers consisting of a Mayor and four Trustees, and also naming a committee on vacancies, all of whom are respondents herein, under the banner of "Atlantic Beach Property Owners Association Party". A subscribing witness to each of the signatures executed her statement at the bottom of each page of the petition. All signatures to said petition were obtained between May 31 and June 4, well within the six weeks' permissible period set forth in subdivision 7 of section 138 of the Election Law, which reads in part: "A signature made earlier than six weeks prior to the last day to file independent petitions, shall not be counted." Thus there is no substance to petitioners' objection that signatures were obtained too early.

On June 6, 1962, petitioners filed a *separate* nominating petition for *each* of their slate, adopting the name "Unity Party".

On none of these petitions is each page signed by the subscribing witness, nor is there any committee on vacancies designated. In each case the attestation of the subscribing witness is on the fourth page, in each instance incorrectly stating the number of signatories. Nor are the terms of office of each of the candidates designated on the petitions although two were to

run for the balance of the " current official year " and two for " one year after the end of the current official year ".

Both sets of petitions were accepted by the Village Clerk on June 6. Upon request the Unity Group were shown the petitions of the Property Owners Group, and, noticing that they had omitted from their petitions a name and emblem and the date of election, the Village Clerk assisted them in correcting this deficiency.

There is no question on this application as to each of the parties having secured sufficient signatures or as to timely filing.

Petitioners contend, amongst other things, that when the Village Clerk accepted their petitions he assured them they were " satisfactory, sufficient and acceptable " and " that unless objections thereto were filed by opposing candidates the petitioners' names would appear on the ballot for June 20th, 1962." This, respondent Putterman vehemently denies, but even if we assume it happened, petitioners would not thereby be relieved from compliance with the law.

One June 9, 1962, Putterman rejected the petitions and notified petitioners their names would not appear on the ballot.

The basis for his determination as stated by him, is as follows:

" 1. They each fail to include the appointment of any qualified persons as a Committee to fill the vacancies, as required by Section 138, Election Law (Matter of Creede, 177 Misc. 141).

" 2. They each fail to state the residence from which the signers thereof were registered at the time of the last preceding general election, as required by Section 138, Election Law (Matter of Connors, 207 Misc. 689, aff'd. 285 App. Div. 959, aff'd. 308 N. Y. 877).

" 3. The authenticating statement of a witness is not appended at the bottom of each sheet containing the signatures on said petitions, as required by Section 138, Election Law (Matter of McKague v. Pearsall, 277 N. Y. 333).

" 4. The pages of each said petition are not consecutively numbered, as required by Section 138, Election Law (Matter of McKague v. Pearsall, supra).

" 5. The authenticating statement of the witness appended to each petition, in each case states that there are fifty (50) signatures on the petition, and in each case there are more than fifty signatures.

" You are hereby notified that the undersigned has determined that the petitions of ARNOLD A. LEVEY, HARRY J. GEGERSON, SEYMOUR RADOW AND MORRIS J. WEINSTEIN, filed with the undersigned on June 6, 1962, are insufficient and do not comply with the requirements of law, for the further reason that they fail to designate

which two are candidates for the office of Trustee for the term expiring one (1) year after the end of the current official year, and which two are candidates for the office of Trustee for the term expiring at the end of the current official year."

Petitioners' argument that the court should take a broad view in determining the validity of their nominating petitions to the end that the voters of the municipality be not deprived of the right to freely express their preference as to candidates, has a ring of homespun justice to it, but it has long since been established that the courts have no such broad powers in deciding whether a nominating petition should be sustained. The Legislature has laid down very careful rules, based on its experience, which are designed to prevent fraud and overreaching in election matters, and failure to comply with these mandatory provisions renders a petition invalid irrespective of whether there may have been fraud in the particular case. The court is powerless to relieve a candidate from the consequences of such errors.

Section 138 of the Election Law entitled "Independent nominations" provides in part (subds. 1, 2, 3) that the petition shall be signed in ink, shall be on white paper, shall be numbered consecutively beginning with number 1 at the foot of each sheet; shall designate the name of the candidate and the public office for which he is running and that it shall appoint a committee to fill vacancies in accordance with the provisions of the Election Law; that it shall be acknowledged by the signers, or authenticated by a witness, in the manner provided by section 135 in respect of a designating petition.

Section 135 provides for a combined acknowledgment and affidavit of verification before a notary public or similar officer, or alternatively (subd. 3) for a statement by an independent witness appended at the bottom of each sheet, but omitting the need for a jurat.

It is further provided in section 138 (subd. 5, par. [b]) that in the case of a village of the third class, with which we are dealing here, the petition must be signed by at least 50 voters.

It will be observed from the above factual recital that the petitioners' nominating petitions are deficient in several important respects. In *Matter of McKague* v. *Pearsall* (277 N. Y. 333) it was held that when a nominating petition is authenticated by the affidavit of the witness before whom it was subscribed, such affidavit must be appended at the bottom of *each* sheet of the petition containing the signatures of the electors. The requirement for such an affidavit in this respect has since been changed by statute to a simple statement which is what we

have here on respondents' nominating petition. However, the petitioners have made the mistake of using a separate sheet for authentication, which would have been proper for a verification *by the voter* before a notary in person, and instead used it for a verification *by the witness* to the signatures who then in turn went before a notary. This conforms to neither of the alternatives permitted by the statute.

The question of failure to consecutively number was also before the court, in the *McKague* case, but not passed on by it. However, in *Matter of Nagiel* (278 N. Y. 696) it was specifically held that the failure to consecutively number the sheets of a petition rendered the petition void. The consecutive numbering of the signatures would not appear to comply with the statutory mandate.

There is another deficiency in that there is no semblance of any attempt to designate a committee on vacancies.

It might be noted in passing that while the failure to designate the offices for which the candidates were running, where the terms of the trustees varied in length as they do here, was a failure to designate ''the office '', I think that section 54 of the Village Law takes care of this objection. It is therein provided that where such an event takes place, the person first named on the ballot shall be deemed designated for the longest term, the second for the next longest term, etc.

The argument that the respondent Putterman, because of the short term for which his appointment was to last, was without power to reject the nominating petitions however legally insufficient they may have been on their face, I deem to be without merit. There is no such office as a *temporary* Village Clerk set forth in the Village Law, and a Clerk legally appointed is nonetheless a Clerk with all the powers and duties of that office, whatever his term may be.

Under section 69 of the Village Law the Election Law is made to apply to village elections.

Section 144 of the Election Law provides for the filing of nominating petitions with the Village Clerk.

Section 145 deals with objections to petitions of designation or nomination, and in the last paragraph thereof provides: '' When a determination of such objections is made, or, no objections having been filed, when a determination is made that a certificate or petition is insufficient, such officer or board shall give notice of the determination forthwith by mail to each candidate named in the petition or certificate, and, if the determination is made upon objections, to the objector.'' This would seem to make it clear that the duties of the Village Clerk include a

duty to ascertain whether nominating petitions filed with him, prima facie at least, comply with the law.

As to the necessity for binding together the separate sheets of a nominating petition, section 136 entitled "Rules concerning designating petitions" states in subdivision 1: " * * * All papers signed and authenticated as provided in this article for the purpose of designating the same candidate for nomination for the same public office or party position, when bound together and offered for filing, shall be deemed to constitute one petition in respect of such candidate." It will be observed that this section does not mandate binding but provides for a special effect, in the event the pages are bound and even then prescribes no special method of binding.

Section 138 dealing with "Independent nominations" has no provision for binding, and the fact that it has independent and contrary provisions on the same matters dealt with in the balance of section 136 would militate against transposing this particular "binding provisions" from the one section to the other.

Something should be said about the charge that the respondent Putterman engaged in a conspiracy to deprive petitioners of their voting franchise. This is based upon his selection of an election date which allegedly made it extremely difficult for the petitioners to comply with another provision of law regarding the time limit for filing nominating petitions. A brief analysis will demonstrate that there is no substance to this charge, and that the time schedule, which is indeed a tight one, is inherent in the law and not in any fell designs of the Village Clerk. Subdivision 8 of section 143 of the Election Law requires an independent nominating petition to be filed not later than 14 days preceding the election.

Section 27 of the Village Law provides that the Town Clerk within five days after the right of an election of officers is complete, shall appoint a Village Clerk. This he did, and Putterman was appointed June 4, 1962.

Section 28 of the same law provides that the Village Clerk shall within five days after his appointment give notice for an election, and shall post and publish the notice. The date selected shall be not less than 10 nor more than 15 days after the posting. The Clerk posted the notice on June 6, two days after his appointment and published it on the following day, designating June 20 as the election date. It is therefore evident that had the Clerk selected an election date at the minimum time of 10 days, as he might have done under the terms of the statute, there would have been no time whatever for filing nominating peti-

tions. Instead he selected a date just one day short of the maximum time that he was allowed by the statute. This is alleged to have been done in deference to some local community practices, but I do not think that the reason is important under the present circumstances. It is apparent that if the Clerk were truly a part of any conspiracy, he could have, within the law, done a much more effective job in discommoding the electorate.

Both sides have used a 20-day period from the date of the Village Clerk's appointment for computing a possible election date, but the court can find no justification in section 28 for combining these separate periods of five days and '' from 10 to 15 days ''. In other words until the Clerk took some action during the five days (and he was by no means required to wait until the last day) the second period did not come into play at all.

We need not consider what the effect would have been, if he had used 10 days for the second period, because the fact is that he did not do so. Furthermore time is not really involved in this case, since petitioners' nominating petitions were filed on time. The trouble with them is in their form and in their failure to conform to the statute. Accordingly the application of the petitioners is denied in all respects.